## 64592. ARMAND v. THE STATE.

BIRDSONG, Judge.

Albert Armand appeals from his conviction by jury for trafficking in drugs, and mandatory minimum sentence of fifteen years without eligibility for parole and $250,000 fine. The sole issue raised on appeal is the denial of his motion for directed verdict of acquittal on the ground that an unbroken chain of decisions holds the factual situation presented here to warrant acquittal as a matter of law.

The testimony of appellant and his wife established the following facts. Appellant's wife was a flight attendant for Eastern Air Lines. On or about August 9, 1981, her former roommate and longtime friend, Nancy Stone, came to enlist her aid in helping a friend of Stone's who was in trouble. Stone told appellant and his wife that her friend, Robbie Helms, had a sister who was in jail on a drug charge. Helms was a paid police informant working for several police departments who, according to Stone, needed a new face to help trap a big drug dealer named Eric in order to get his sister a more lenient sentence. Helms told appellant he needed someone who was "not involved with the police on the one hand [or] with drugs on the other hand" and "didn't even look the part."

At that time appellant was employed at the Georgia Radio Reading Service, a Christian reading service for the blind, while also working as a recording engineer and studio manager at ADC Recording Studio, which records religious, gospel and inspirational music. Prior to that he had worked as a researcher, interviewer and programmer at Atlanta Interfaith Broadcasters, an independent production company broadcasting religious programs. According to appellant's statement, his sole experience with drugs of any kind had been to smoke marijuana once while in high school. This resulted in a

three-day migraine headache, and he never tried it again.

Appellant contends he was reluctant to become involved in Helms' scheme but he agreed to talk to Eric, whom he found to be so arrogant and offensive that he decided to cooperate with the police to catch him. Helms introduced appellant to Eric on August 18 or 19, and they set up the first "buy," which was to be a sample of a pound of cocaine that appellant was to sell him for $26,000. Helms supplied appellant with both the sample and the main portion of the cocaine, which appellant thought was going to be a "sham" substance. Eric, however, turned out to be an undercover police investigator from DeKalb County Police Department, and at the time the drugs and money were exchanged it was appellant who was arrested.

The investigator testified that Helms had worked for him in the past as a confidential informant, that he had paid Helms $200 for the information leading to appellant's arrest and that Helms' sister was released from jail after serving only ten days when he "informed the Assistant District Attorney of the contribution of the brother." After the initial "sample" sale, the investigator dealt directly with appellant, with negotiations including numerous telephone conversations taking almost a month until the final sale was accomplished on September 15, 1981. Two tape recordings made by the investigator of conversations with appellant were played for the jury. The investigator had no prior knowledge of appellant and all he knew about him was information received from Helms that appellant had access to and would be willing to sell large amounts of cocaine. Appellant had no criminal record.

The evidence showed that the 452 grams of substance seized was only 25% pure cocaine, which was below average for this quantity. A quarter pound of pure cocaine could be purchased for $5,000 to $8,000 by anyone with the right connections and 3/4 pound of sugar, the cutting agent used here, for $.75. Both Helms and his sister were familiar with the drug scene and would have been able to set up the sale to secure her release from jail. However, the investigator testified that Helms had nothing to do with his setting up the sale and, in fact "did not know when the thing was going down."

While the police investigator testified that Helms said appellant was a long-time drug dealer, Helms was not called by the state as a witness, even though his identity was known at trial. The trial court overruled appellant's motions for directed verdict of acquittal and allowed the issue to go to the jury.

This court has consistently held that the state's failure to produce the confidential informant to rebut a defendant's entrapment testimony requires a directed verdict of acquittal. See, e. g., *Robinson v. State,* 145 Ga. App. 17 (243 SE2d 257); *Henderson v.*

*State,* 141 Ga. App. 424 (1) (233 SE2d 500); *Coleman v. State,* 141 Ga. App. 193 (2) (233 SE2d 42); *Hall v. State,* 136 Ga. App. 622, 623 (222 SE2d 140); *Harpe v. State,* 134 Ga. App. 493 (214 SE2d 738). In *State v. Royal,* 247 Ga. 309 (275 SE2d 646), the Supreme Court reviewed this body of law and determined that it did not establish a per se ruling entitling a defendant to acquittal, but that "[a] distinction must be made between evidence which *raises* a defense of entrapment and which would require that the jury be charged as to the law of entrapment and the burden of proof thereon, and evidence which, under the standards set out in Code Ann. § 27-1802, would *demand* a finding of entrapment and, therefore, a directed verdict of acquittal.

"Lack of conflict in the evidence is only one of the criteria in Code Ann. § 27-1802. Thus a defendant's testimony as to entrapment, even if unrebutted by any other witness to the alleged misconduct, will not entitle him to a directed verdict of acquittal unless that unrebutted testimony, together with all reasonable deductions and inferences therefrom, demands a finding that entrapment occurred." *Royal,* supra, p. 310. In the instant case, as in *Royal,* the trial judge concluded that a finding of entrapment was not demanded, merely raised, by the evidence, and charged the jury accordingly.

Our review of the evidence and of the factors considered by the *Royal* court convinces us that this was correct. "[W]here the state produces rebuttal to the testimony of the appellant, it is not essential for the informer to testify. [Cit.]" *Chambers v. State,* 154 Ga. App. 620, 625 (269 SE2d 42); *Bennett v. State,* 158 Ga. App. 421, 422 (1) (280 SE2d 429). Thus, the testimony of the undercover investigator that the informant Helms had nothing to do with setting up the sale of the pound of cocaine, and in fact did not know it was going on, was sufficient to raise a jury question as to whether appellant was entrapped into the commission of the crime. See *McDonald v. State,* 156 Ga. App. 143 (4) (273 SE2d 881). Moreover, "[t]he evidence does not require a finding that [appellant] was induced to participate in and thereby commit the crime by the undue persuasion, incitement or deceitful means of government agents. Code [Ann.] § 26-905. Thus, a finding of entrapment is not required as a matter of law." *Smith v. State,* 239 Ga. 477, 480 (1) (238 SE2d 116).

The trial court correctly charged the law of entrapment and the jury decided the issue adversely to appellant. Therefore, no grounds for reversal have been presented.

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED OCTOBER 26, 1982 —
REHEARING DENIED NOVEMBER 10, 1982 —

*Roman A. DeVille,* for appellant.

*Robert Wilson, District Attorney, Michael M. Sheffield, Susan Brooks, Assistant District Attorneys,* for appellee.