A89A2351. EMANUEL v. THE STATE.
A89A2352. BRuNEIO v. THE STATE.
(393 SE2d 74)

BANKE, Presiding Judge.

Defendants David Emanuel and Mary Elizabeth Bruneio were jointly indicted on charges of selling cocaine and distributing marijuana in violation of the Georgia Controlled Substances Act. They were jointly tried before a jury and found guilty merely of possessing cocaine and marijuana. Their primary contention on appeal is that they should have received a directed verdict of acquittal based on the state's failure to introduce evidence rebutting their defense of entrapment.

It was established without dispute at trial that the appellants had sold approximately 12 grams of cocaine to an undercover agent and had given him a "small sample" of marijuana in connection with that transaction. Defendant Emanuel testified that he and Bruneio were persuaded to make this sale by a close friend named Dennis Evans, who told them that he had gotten into trouble involving drugs, that he had agreed to "turn people over" to the government in return for a reduced sentence, that the law enforcement agents for whom he was supposed to be informing were angry at him due to his lack of success in producing arrests, and that he needed the defendants to help him make a case against a man named "Dominique," who was coming to town from Chicago, by posing as drug dealers. Emanuel stated that he and Bruneio resisted Evans' entreaties at first but were eventually persuaded to help him because of their belief that he was working for the government. "Dominique," of course, proved to be the drug enforcement agent for whom Evans was informing. Emanuel stated that Evans brought the cocaine and marijuana to their apartment prior to the transaction and subsequently retrieved the remaining drugs, along with the money the agent paid them for the cocaine he purchased.

The undercover agent testified that Emanuel wanted to sell him approximately 50 grams of cocaine for $50 a gram but that he told him he was only interested in purchasing a sample of between 10 and 15 grams. The agent further testified that Emanuel told him "he normally bought the cocaine at $45 per gram and he would normally purchase a hundred grams at a time," that defendant Bruneio told him the cocaine they wished to sell him was of "high quality," and that Emanuel advised him that it was "not cut to the street level." The agent stated that both defendants "snorted" cocaine upon his arrival at their apartment, that Bruneio then removed a "rock" of cocaine from a plastic bag and weighed it, and that he purchased this rock for $600 after determining that it weighed approximately 12 grams.

Emanuel denied that either he or Bruneio had ever used drugs, maintaining that the only person who had used drugs in his apartment on the night in question was Evans. Also, it was established without dispute that the agent had made subsequent requests to purchase drugs from them but that they had refused to meet with him. It was further shown that Emanuel had hired an investigator in an attempt to secure Evans' presence at trial, but without success. *Held*:

1. "[T]here exists no '*per se* rule that a defendant is entitled to a directed verdict where the informant is not called to rebut the defendant's testimony of entrapment. . . . (A) defendant's testimony as to entrapment, even if unrebutted by any other witness to the alleged misconduct, will not entitle him to a directed verdict of acquittal unless that unrebutted testimony, together with all reasonable deductions and inferences therefrom, demands a finding that entrapment occurred.' *State v. Royal*, 247 Ga. 309, 310 (275 SE2d 646) (1981)." *Goolsby v. State*, 184 Ga. App. 390, 391 (361 SE2d 684) (1987).

We believe the jury in this case could reasonably have determined that the defendants had a criminal predisposition to possess drugs (the only offense of which they were found guilty), based on the undercover agent's testimony that both of them "snorted" cocaine on the night in question. Also, it was inferable from Emanuel's purported statement to the agent that he "normally" purchased a hundred grams of cocaine at a time as well as from his statement that the cocaine he was selling had not been "cut to street level," that this was not his first experience with drug trafficking. It follows that the defendants were not entitled to a directed verdict of acquittal on the basis of their entrapment defense. The defendants' reliance on *Perry v. State*, 143 Ga. App. 227 (237 SE2d 705) (1977), as authority for a contrary holding is misplaced, as it does not appear that similar evidence of criminal predisposition was present in that case. Construing the evidence in favor of the verdict, we hold that a rational trier of fact could reasonbly have found the defendants guilty of possessing cocaine and marijuana beyond a reasonable doubt. See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The undercover agent testified on cross-examination that Evans had previously been arrested for selling cocaine, that he had agreed to act as an informant in the hope of receiving a lenient sentence on that charge, and that he had ultimately received a probated sentence after pleading guilty to a lesser offense. The defendants contend that during its subsequent redirect examination of the agent, the state was improperly permitted to "bolster[] the credibility of the non-testifying informant," as follows: "Q. Is it an unusual practice to allow one [drug dealer] to plead out to a lesser sentence in order to get a greater number? A. No, it is not. I would have to say that Mr.

Evans was a very good informant . . . who accomplished infiltrating numerous other cocaine distributors where large sales of cocaine were made other than this case. Q. Approximately how many of those type seizures did you make as a result of his information? . . . A. I can recall, just thinking now, at least three substantial arrests were in excess of kilograms of cocaine were seized through the utilization of Dennis Evans as an informant."

This testimony cannot be viewed as improperly bolstering Evans' credibility, since he was not present in court and did not testify. We note that the defendants' original objection to this testimony was that it was irrelevant and immaterial. However, the defendants' entrapment defense was based on the theory that Evans was so desperate to produce an arrest that he was willing to "set up" two close friends who were not even involved in drug trafficking. In this context, the agent's testimony on redirect examination was relevant to show that Evans' situation was not in fact that desperate. Thus, the defendants' objections to this testimony, as stated, were properly overruled.

3. In response to the defendants' initial objection that the above testimony by the undercover agent lacked relevance, the trial court made the following comment: "I thought y'all's position was he got a light sentence and there was no good reason for him to have it." The defendants unsuccessfully moved for a mistrial on the basis of this comment, complaining that it constituted an improper expression of opinion by the court "as to the nature of our testimony as to what we were trying to establish." On appeal, they contend that the comment "bolstered the state" and was "extremely prejudicial" to the defense. However, we are unable to perceive how the statement could have had either of these effects. "The statutory inhibition (OCGA § 17-8-55) against an expression or intimation of opinion by the trial court as to the facts of the case does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence. [Cits.]" *Mathis v. State*, 171 Ga. App. 620 (1) (320 SE2d 861) (1984). The trial court did not err in denying the motion for mistrial.

4. The appellants' remaining enumeration of error is directed to two comments made by the state's attorney during his closing argument. The first of these comments was to the effect that it is the job of law enforcement agents to keep illicit drugs off the street, "where it ultimately ends up in the hands of your children, your neighbors, your friends, your relatives who pay for the stuff." The second was an observation that "birds of a feather flock together," made in the context of an argument that law enforcement agents are forced to rely on drug dealers to locate other drug dealers.

Because the defendants have not provided this court with any argument or citation of authority for their contention that these comments were objectionable, this enumeration of error has technically

been abandoned pursuant to Rule 15 (c) (2) of this court. Nevertheless, we hold that there was nothing objectionable about the comments in the context in which they were made. The first was simply an appeal to the jury to consider the evils of drug trafficking and take a firm stand against it. "It is not improper for a prosecutor to appeal to the jury to consider the safety of the community and the desired result of general prevention of crime. [Cit.] A prosecutor's comment to jurors that they could take part in the war against drug trafficking by convicting the defendant is not an improper appeal. [Cit.]" *Callahan v. State*, 179 Ga. App. 556, 564 (347 SE2d 269) (1986). As for the second comment, it is clear from the context in which it was made that the state's attorney was not suggesting that the defendants could be found guilty of using or selling drugs based on their friendship with Evans but was instead attempting to explain to the jury why the state had to rely on information provided by drug dealers to make cases against other drug dealers. Compare *Banks v. State*, 191 Ga. App. 344 (1) (381 SE2d 548) (1989).

*Judgment affirmed. Carley, C. J., Deen, P. J., McMurray, P. J., Birdsong, Beasley and Cooper, JJ., concur. Sognier and Pope, JJ., dissent.*

Pope, Judge, dissenting.

I must dissent. As to the defense of entrapment, OCGA § 16-3-25 provides that "[a] person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime. Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer." In this case defendant Emanuel's testimony clearly established a prima facie case of entrapment, which the State did not rebut. "The record is absolutely devoid of evidence . . . that the circumstances surrounding the solicitations by the . . . informant occurred in a way other than that testified to by [Emanuel]." *Robinson v. State*, 145 Ga. App. 17 (1) (243 SE2d 257) (1978). As was stated by this court in *Perry v. State*, 143 Ga. App. 227 (237 SE2d 705) (1977) "[i]f the informer's testimony would disprove the defendant's testimony, the state should have produced him." Id. at 228.

However, and despite the total lack of evidence to rebut defendant Emanuel's testimony establishing the defense of entrapment, the majority cites *Goolsby v. State*, 184 Ga. App. 390 (361 SE2d 684) (1987), for the proposition that there is no "per se rule" that a de-

fendant is entitled to a directed verdict of acquittal where the informant is not called to testify to rebut the defendant's testimony of entrapment. *Goolsby*, however, provides no support for the majority's position inasmuch as the defendant in that case was acquitted of the original sale initiated by the informant on the basis of entrapment. Moreover, in *Goolsby*, the evidence clearly established subsequent drug sales that were initiated by the defendant and it was on the basis of subsequent transactions that defendant was convicted of selling drugs. In contrast the undercover agent in this case, as well as defendant Emanuel, testified that the agent tried to contact the defendants following the initial sale for the purpose of buying more drugs but that they refused to have any further contact with him. Thus the majority's reliance on *Goolsby* is both misplaced and misleading and offers no basis for the conclusion that the trial court did not err in refusing to grant a directed verdict of acquittal on the basis of defendants' entrapment defense.

Moreover, regarding predisposition to commit the offense, which the majority posits as the distinguishing factor between this case and *Perry*, supra, I do not believe, as the majority suggests, that the State was required to show only "that the defendants had a criminal predisposition to *possess* drugs," the offense of which they were found guilty, when they were charged with the offenses of *selling* cocaine and *distributing* marijuana. Furthermore, I do not believe that the State met its burden of showing the necessary predisposition to commit either the offense of possessing drugs or of selling and distributing drugs. As to the issue of possessing or using drugs the defendant testified that the only person who used drugs on the night in question was Evans, the confidential informant; the undercover agent, however, in response to an unrelated question, interjected testimony that defendants snorted cocaine on the night of the drug buy. The majority also relies on certain facts from which they contend it can be *inferred* that this was not the defendants' first experience with drug trafficking. However, in my opinion, unresponsive testimony, inferences and suggestion are not sufficient to meet the State's burden of showing "*beyond a reasonable doubt* that the [defendants' were] predisposed to commit the [offenses.]" (Emphasis supplied.) *Griffin v. State*, 154 Ga. App. 261, 264 (267 SE2d 867) (1980). Under these circumstances, in which the State neither offered evidence to rebut defendants' testimony that they were entrapped, nor offered evidence showing the defendants' predisposition to commit the crimes for which they were charged or convicted, I believe the defendants were entitled to a directed verdict of acquittal. See *Robinson v. State*, supra; *Perry v. State*, supra. Consequently, I would reverse. For this reason, I would also find it unnecessary to reach defendants' remaining enumerations of error. See *Perry*, supra at 2.

I am authorized to state that Judge Sognier joins in this dissent.

DECIDED MARCH 16, 1990 —
REHEARING DENIED MARCH 30, 1990 —

*Herbert Shafer, Jerome J. Froelich, Jr.,* for appellants.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Rebecca A. Keel, Grover W. Hudgins, Assistant District Attorneys,* for appellee.